**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

WESTERN MONTANA COMMUNITY
PARTNERS, INC., a Montana non-profit
corporation; SPECIAL USE PERMIT
FOR PUBLIC RESORT BENEFITS,
LLC, a Montana limited liability
corporation,

          Plaintiffs-Appellants,

 v.

DEBORAH AUSTIN, Lolo National
Forest Supervisor; JULIE KING,
Bitterroot National Forest Supervisor;
FAYE KRUEGER, Regional Forester of
Region One of the U.S. Forest Service;
UNITED STATES FOREST SERVICE,
an agency of the U.S. Department of
Agriculture,

          Defendants-Appellees.

No.   15-35568

D.C. No. 9:13-cv-00282- DWM

MEMORANDUM[*]

FILED

JUN 16 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted June 5, 2017

---

      [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Portland, Oregon

Before: TASHIMA, GOULD, and RAWLINSON, Circuit Judges.

Western Montana Community Partners, Inc., and Special Use Permit for

Public Resort Benefits, LLC (together, "SUPPRB"), appeal from the district

court's grant of summary judgment to Deborah Austin, Julie King, Faye Krueger,

and the United States Forest Service (collectively, the "Forest Service") on

SUPPRB's Administrative Procedure Act ("APA") claim. *See* 5 U.S.C. § 551 *et*

*seq*. SUPPRB brought suit after the Forest Service denied SUPPRB's application

for a special use permit to develop a ski resort within the Lolo and Bitterroot

National Forests. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**1.** SUPPRB has exhausted its administrative remedies. It was not

entitled to an administrative appeal because it did not apply for a special use permit

at the invitation of a "prospectus" issued by the Forest Service. *See* 36 C.F.R. §§

214.2, 214.4(c)(2).

**2.** We review *de novo* the district court's summary judgment ruling on

SUPPRB's APA claim. *Nat. Res. Def. Council, Inc. v. Nat'l Marine Fisheries*

*Serv.*, 421 F.3d 872, 877 (9th Cir. 2005). "De novo review of a district court

judgment concerning a decision of an administrative agency means the court views

the case from the same position as the district court." *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 973 (9th Cir. 2003).

The Forest Service denied SUPPRB's application after concluding that its proposal was inconsistent with visual quality, recreation, timber, and other land use standards mandated by the Lolo and Bitterroot Forest Plans. SUPPRB has failed to show that this conclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

     **a.** The Forest Service did not abuse its discretion in concluding that the proposed resort would not meet the visual quality standards of retention or partial retention. SUPPRB takes issue with the agency's conclusion because, in reaching it, the agency did not conduct a field study, but instead relied on a photograph supplied by SUPPRB. But the regulations do not require the Forest Service, in reviewing a permit application at the initial screening stage, to conduct a study in order to assess a proposal's visual impacts. *See* 36 C.F.R. § 251.54(e)(1). The Forest Plans state that an activity's compliance with visual standards will be determined in-office using "[m]aps of . . . viewpoints [that] are on file." Moreover, SUPPRB included a photograph in its proposal for the express purpose of "demonstrat[ing] how 'Visual Retention' standards can easily be met";

3

it cannot complain that the Forest Service used the photograph for its intended purpose.

**b.** The Forest Service did not abuse its discretion in concluding that the proposal includes development in Management Area 5 of the Bitterroot National Forest and Management Area 11 of the Lolo National Forest. The Forest Plan maps, as well as SUPPRB's own map, show that the proposal touches these areas. Although SUPPRB now claims that only future phases of the proposal, which it says were optional, touch on these areas, SUPPRB gave no indication in its application that later phases were optional.[1]

**c.** The Forest Service did not abuse its discretion in concluding that SUPPRB's proposal was inconsistent with the Lolo Forest Plan because the proposed resort would indirectly affect the Carlton Ridge Research Natural Area ("RNA"). SUPPRB argues that its proposal avoided any direct contact with the RNA. The Forest Service does not disagree. Rather, its decision rested on a

---

[1] In its reply brief, SUPPRB argues that the agency was required to consider the phases separately, pursuant to its obligation to discern whether the proposal could "be made consistent" with the Forest Plans. *See* 36 C.F.R. § 251.54(e)(1)(ii). Because it was not made in the opening brief, the argument is waived. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

potential indirect effect due to the fact that the proposed resort would surround the RNA on all four sides.

**d.** The Forest Service did not abuse its discretion in concluding that the proposal contravenes the recreational standards applicable to Management Area 5 of the Bitterroot Forest Plan. Contrary to SUPPRB's contention, Management Area 5 "is not suitable for timber production" under the Bitterroot Forest Plan. Although SUPPRB is correct that snowmobiling is allowed in Management Area 5, it does not follow that SUPPRB's proposed ski resort is allowed. The Forest Plan authorizes "snowmobiling" as an activity "associated with roadless areas." Other such activities are "hiking, hunting, fishing, camping, [and] motor biking." The only physical construction permitted to facilitate such recreation is of "[t]railhead facilities" and other "primitive shelters, corrals, tent frames, hitchrails, and sanitation facilities." The Forest Service reasonably concluded that those activities and improvements are less invasive than the proposed resort, which would require installation of permanent lodge facilities and ski lift equipment.

**e.** SUPPRB contends that the district court erroneously ruled that a permit to construct a ski resort cannot be approved unless the Forest Plans have expressly set aside lands for such a development. Even assuming a requirement of

5

that nature would be contrary to law, SUPPRB has mischaracterized the district court's ruling. The district court assessed each inconsistency identified by the Forest Service; it did not rely on a conclusion that a Forest Plan must allocate lands for new development before the Forest Service may approve a development permit. In any case, we look to the agency's decision, not the district court's decision, and consider only those rationales that the agency itself gave to support its denial. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

      **f.**      Finally, SUPPRB contends that the Forest Service acted arbitrarily and capriciously in denying its application when the agency had previously endorsed the construction of a ski resort at Lolo Peak. This argument fails for at least three reasons. First, it mischaracterizes the agency's views, which the record shows were mixed. While the agency initially noted that Lolo Peak could potentially make for a national-class ski resort, it also identified the drawbacks of siting a resort there, called for additional study of the area, and eventually took a neutral position on the subject. Second, the Forest Service's denial of SUPPRB's application did not foreclose the possibility of any ski resort, but instead rejected SUPPRB's proposal because the agency found that the proposal was inconsistent with the Forest Plans. Third, an agency's change in position alone is not a reason to reverse the agency. As a result, even if the Forest

6

Service had consistently endorsed the concept of building a resort at Lolo Peak, it would have been free to change its view, as long as its "new policy is permissible under the statute, . . . there are good reasons for it, and . . . the agency *believes* it to be better." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

**AFFIRMED**.

FILED

JUN 16 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*W. Montana Community Partners v. Austin*, **Case No. 15-35568**
**Rawlinson, Circuit Judge, concurring:**

I concur in the result.